**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| H.T., individually and on behalf of a minor M.H., L.H., individually and on behalf of a minor R.H., M.B. individually and on behalf of a minor M.B., K.S., individually and on behalf of a minor, B.S., A.B. and M.B., individually and on behalf of a minor, E.B., K.C. and N.S., individually and on behalf of a minor, E.S., K.C. and N.S., individually and on behalf of a minor, E.S., K.C. and N.S., individually and on behalf of a minor, T.S., J.O., individually and on behalf of a minor, X.O., J.O., individually and on behalf of a minor, C.O., G.H., individually and on behalf of a minor, M.H., C.G. and C.G., individually and on behalf of a minor, N.G., C.G. and C.G., individually and on behalf of a minor, A.G., J.G., individually and on behalf of a minor, J.G., J.U. individually and on behalf of C.U.[1]   Plaintiffs,   v.   CENTRAL BUCKS SCHOOL DISTRICT   Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civ. No. _____ |

**<u>VERIFIED COMPLAINT</u>**

1.    Defendant is a public school district pursuant to the Pennsylvania Public School Code of 1949, 24 P.S. § 101 et. seq.

---

[1]    Initials are being utilized to protect the identity of each of the students and their parents as universal masking is a very contentious issue in the District.  Threats have been made and last weekend there were reports of Proud Boy "patriots" being in the District for the August 25, 2021 School Board meeting.  All Plaintiffs reside in the District and attend District schools.  Thus, Plaintiffs need to be as anonymous as possible to protect themselves in the community.

2.     Defendant currently refuses to provide reasonable accommodations to students with disabilities by refusing to implement a health and safety plan designed in accordance with current federal, state, and local guidance.

3.     Defendant's refusal to provide reasonable accommodations in the form of an appropriate health and safety plan puts Plaintiffs (namely, *children with disabilities*) at risk of death and debilitating illness from COVID-19.  Defendant's refusal to provide reasonable accommodations for students with disabilities thereby excludes Plaintiffs from their education.

4.     Plaintiffs accordingly bring this action for both injunctive relief and prevailing party fees to remedy Defendant's violations of Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504").

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over the ADA Title II and Section 504 of the Rehabilitation Act claims in this case pursuant to 28 U.S.C. § 1331.  Plaintiffs' claims arise under the laws of the United States and the relief sought herein is within the power of the Court to grant. *See* 29 U.S.C. § 701, *et seq.* and 20 U.S.C. § 1681, *et seq.*

6.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the events giving rise to the claims set forth herein occurred within the jurisdiction of this Court.

7.     The Court has personal jurisdiction over Central Bucks School District, which is a public school district in Doylestown, Pennsylvania.

## PARTIES

**M.H. in Furlong, Pennsylvania**

8.     H.T., parent, of M.H. bring this action on behalf of M.H., a 15-year-old student who attends Lenape Middle School.

2

9.      M.H. is a child diagnosed with two forms of cancer: Medullablastoma, a brain tumor with metastasis to spine, and Osteosarcoma of sacrum, a bone tumor.

10.     M.H. has been treated with chemotherapy, stem cell therapy, and radiation.  She has undergone a three-day-intensive surgery which took over six months to recover.

11.     Due to M.H.'s cancers, treatments, and surgeries, she is immunocompromised.

12.     Additionally, M.H. suffers from side effects including, but not limited to, loss of hair, non-functioning pituitary gland ( does not produce GH and FSH), niastagmus and pupil dilatation, intolerance to heat imbalance, mental delay, brain induced ADHD, depression, scarring in right ventricle of heart from port and blood infections, nodual hypoplasia of liver from chemotherapy, partial right lungdectomy, seizures, syncope, medicinal allergies, feeding disorder, bilateral neuropathy of lower legs and feet, 50% bilateral hearing loss and partial paralysis.

**R.H. in Doylestown, Pennsylvania**

13.     L.H., parent of R.H., brings this action on behalf of R.H., a twelve-year-old student who attends Lenape Middle School.

14.     R.H. is a child diagnosed with Type 1 Diabetes.  Type 1 Diabetes is an autoimmune disorder where the patient's pancreas stops working.

15.     When R.H. gets any sickness, he must go on "sick day rules" which means that he must stay home to monitor his illness, check for ketones every two hours, receive extra insulin to regulate his blooks sugar, and drink a lot of liquids.

16.     Due to R.H.'s disease, he is more vulnerable to severe side effects or death from COVID – 19.

17.     R.H. has a Section 504 Plan for his Type 1 Diabetes.

**M.B. in Chalfont, Pennsylvania**

18.     M.B., parent of M.B., brings this action on behalf of M.B., an eleven-year-old student who is a rising 6th grader at Pine Run Elementary School.

19.     M.B. is a child diagnosed with Epilepsy, ADHD, and a learning disability.

20.     M.B. is currently scheduled for a surgical procedure in September 2021 and exposure to COVID – 19 could impact her ability to have surgery or seek subsequent treatment for her medication resistant epilepsy.

21.     M.B. has an educational disability of Other Health Impairment and has an IEP. Due to her Other Health Impairment, she requires in-person instruction.  M.B. often requires small group instruction and 1:1 work with aides.

22.     Due to M.B.'s disabilities, she is more vulnerable to severe side effects, including uncontrollable seizures and high fevers, or death from COVID – 19.

**B.S. in Doylestown, Pennsylvania**

23.     K.S., parent of B.S., brings this action on behalf of B.S., a nine-year-old student who is a rising 4th grader at Cold Spring Elementary School.

24.     B.S. is a non-verbal child diagnosed with intellectual disability, recurrent respiratory infections, and hypotonia due to MECP2 Duplication Syndrome, a rare neurogenetic disorder caused by a duplication of the MECP2 gene on the X chromosome.  Duplication of the MECP2 gene leads to an abundance of protein.

25.     Due to B.S.'s disabilities, he is more vulnerable to severe side effects or death from COVID – 19.

26. The District's failure to implement reasonable accommodation in the form of the recommended health and safety measures places B.S. at a high risk for severe illness or death from Covid-19.

27. B.S. has an IEP for life skills placement and receives occupational therapy, physical therapy, and speech and language therapy.

**E.B. in Mechanicsville, Pennsylvania**

28. A.B. and M.B., parents of E.B., bring this action on behalf of E.B, a twelve-year-old student who is a rising 7th grader at Holicong Middle School.

29. E.B. is diagnosed with ADHD and has executive functioning deficits.

30. E.B. has a Section 504 Plan because of her ADHD.

31. E.B. requires in-person instruction due to her ADHD as she cannot access her education virtually.

**C.U. in Chalfont, Pennsylvania**

32. J.U., parent of C.U., brings this action on behalf of C.U., a ten-year-old student who is a rising 5th grader at Butler Elementary School.

33. C.U. has a Section 504 Plan for ADHD and anxiety.

34. C.U.'s anxiety significantly worsened during the pandemic due to fears. C.U. is on medication to manage his anxiety.

35. C.U. requires in-person instruction as he is unable to access his education virtually.

**E.S. in Doylestown, Pennsylvania**

36. K.C. and N.S., parents of E.S., bring this action on behalf of E.S., a ten-year-old student who is a rising 5th grader at Buckingham Elementary School.

37.     E.S. is diagnosed with ADHD and has a Section 504 Plan.

38.     E.S. requires in-person instruction as she is unable to access her education

virtually due to her inattention and executive functioning deficits.

**E.S. in Doylestown, Pennsylvania**

39.     K.C. and N.S., parents of E.S., bring this action on behalf of E.S, an eight-year-

old student who is a rising 3rd grader at Buckingham Elementary.

40.     E.S. is suffering from an undiagnosed medical condition that is causing irregular

heart rates and episodes of sudden onset of shortness of breath.  The last time E.S. had a fever

she was sent to the hospital because her resting heart rate was dangerously high.

**T.S. in Doylestown, Pennsylvania**

41.     K.C. and N.S., parents of T.S., bring this action on behalf of T.S., a six-year-old

student who is a rising kindergartener at Buckingham Elementary School.

42.     T.S. has asthma and uses albuterol and budesonide inhaled treatments for her

asthma flare ups.

43.     T.S.'s asthma flares when she has a respiratory illness, and it takes weeks for her

to return to baseline.

**X.O. in Doylestown, PA**

44.     J.O., parent of X.O., brings this action on behalf of J.O., an eleven-year-old

student who is a rising 6th grader at Cold Springs Elementary School.

45.     X.O. is diagnosed with ADHD and has a Section 504 Plan.

46.     Because of X.O.'s executive functioning deficits, he requires in-person

instruction.

**C.O. in Doylestown, Pennsylvania**

47.     J.O., parent of C.O., bring this action on behalf of C.O., a nine-year-old student, who is a rising 4th grader at Cold Springs Elementary School.

48.     C.O. is diagnosed with ADHD and has a Section 504 Plan.

49.     Because of C.O.'s executive functioning deficits, he requires in-person instruction.

**M.H. in Point Pleasant, Pennsylvania**

50.     G.H., parent of M.H., brings this action on behalf of M.H., a ten-year-old student who is a rising 5th grader at Jamison Elementary School.

51.     M.H. is diagnosed with Autism Spectrum Disorder and ADHD.

52.     M.H. has an IEP for Autism and Other Health Impairment and is in the District's autism support program at Jamison Elementary School.

**N.G. in Jamison, Pennsylvania**

53.     C.G. and C.G., parent of N.G., bring this action on behalf of N.G., a six-year-old student who is a rising 1st grader at Warwick Elementary School.

54.     N.G. is diagnosed with Trisomy-21 also known as Down Syndrome.

55.     Due to Down Syndrome, N.G. is at risk medically of contracting COVID-19.

56.     N.G. has low tone and her thyroid levels are monitored on an on-going basis.

57.     N.G. has an IEP for Intellectual Disability and requires in-person instruction in order to receive an appropriate education.

**A.G. in Jamison, Pennsylvania**

58.     C.G. and C.G., parents of A.G., bring this action on behalf of A.G., a ten-year-old student who is a rising 5th grader at Warwick Elementary School.

59. A.G. is diagnosed with Cystic Fibrosis and has a Section 504 Plan.

60. Due to Cystic Fibrosis, A.G. has pulmonary issues and digestive issues.

61. A.G. is at high risk of contracting COVID-19 which would risk a lung infection and hospitalization.

**J.G. in Doylestown, Pennsylvania**

62. J.G., parents of J.G., bring this action on behalf of J.G., a nine-year-old student who is a rising 4th grader at Cold Springs Elementary School.

63. J.G. is diagnosed with ADHD and has a Section 504 Plan.

64. Because of J.G.'s executive functioning deficits, he requires in-person instruction

65. As was known to Defendant at all times relevant to this action, all Plaintiffs are qualified individuals with a disability under Section 504 of the Rehabilitation Acts of 1972 and 1974 ("Section 504") and under Title II of the Americans with Disabilities Act ("ADA").

66. Defendant is a public school district with an address of 20 Welden Drive, Doylestown, Pennsylvania 19355. As a public school district, Defendant is, under Title III of the ADA, a public accommodation. *See* 42 U.S.C. § 12181.

**FACTS**

67. Plaintiffs are each qualified individuals with a disability under Section 504 and the ADA.

68. For each student who has either a Section 504 Plan or IEP, Defendant has acknowledged that that student is a qualified individual with a disability.

69. On July 27, 2021, the School Board approved a health and safety plan for the 2021-2022 school year that failed to include any COVID-19 mitigation measures. The Board-approved health and safety plan includes a provision that masking for all staff and students is

8

optional.  *See* Exhibit A, The District's health and safety plan dated July 27, 2021.

70.     The July 27, 2021 health and safety plan also fails to provide for required social distancing and contact tracing.

71.     On August 5, 2021, the Centers for Disease Control and Prevention ("CDC") revised its guidance for COVID-19 prevention in K-12 schools.  The CDC currently recommends universal indoor masking by all students age 2 and older, staff, teachers, and visitors to K-12 schools, regardless of vaccination status.

72.     In addition to universal indoor masking, CDC recommends schools maintain at least 3 feet.

73.     The guidance emphasizes that implementing layered prevention strategies (e.g. using multiple prevention strategies together consistently) to protect students, teachers, staff, visitors, and other members of their households and support in-person learning because many schools serve children under the age of 12 who are not eligible for vaccination at this time, like Defendant who serve students ages 5 - 21.

74.     Additionally, the American Academy of Pediatrics ("AAP") recommends universal masking in school for all students older than 2 years and all school staff (unless medical or developmental conditions prohibit use).  The AAP reminds the public and education decision-makers, like Defendant, that "there needs to be a continued focus on keeping students safe, since not all students will have the opportunity or be eligible to be vaccinated before the start of the next school year."

75.     The AAP recommends, "Special considerations and accommodations to account for the diversity of youth should be made, especially for populations facing inequities, including those who are medically fragile or complex, have developmental challenges, or have

disabilities."

76. Defendant's own County Health Department reversed course and is now recommending that all students be masked in schools this Fall. *See* https://buckscounty.gov/CivicAlerts.aspx?AID=168&fbclid=IwAR13KF6W-5nB6MhY9aPZMl-5DvpfJTp_LGfyzl2c8mD4DLDp8ZwCYBe2OnI. That reversal took place over the course of approximately two days, and coincided with the news that in Georgia, where the governor has not mandated masks, there have been four thousand cases of COVID-19 in the metro Atlanta area *alone*.

77. On August 25, 2021, Pennsylvania's Governor Tom Wolf requested that the General Assembly be brought back into session to pass legislation to require schools and childcare centers to have students and staff wear masks indoors due to the rise of the Delta variant.

78. Defendant held an emergency school board meeting on August 25, 2021, regarding the health and safety plan.

79. Defendant's Superintendent proposed a revised health and safety plan which includes universal indoor masking in buildings and transportation, contact tracing, and other mitigation measures. *See* Exhibit B, The Superintendent's proposed health and safety plan dated August 25, 2021.

80. The School Board refused to approve their own Superintendent's recommendation and refused to approve the August 25, 2021 revised health and safety plan.

81. The July 27, 2021 health and safety plan, which predates the new guidance issued because of the increase in COVID cases due to the Delta variant of COVID-19, remains in effect for the first day of school, August 30, 2021.

82.     By beginning the school year on August 30, 2021, with the July 27, 2021 health and safety plan in place, Defendant is failing to provide reasonable accommodations to each Plaintiff.

83.     By beginning the school year on August 30, 2021, with the July 27, 2021 health and safety plan in place, Defendant will be discriminating against each Plaintiff by acting with deliberate indifference to provide reasonable accommodations for each Plaintiff's disability.

## COUNT I: VIOLATIONS OF TITLE II OF
## THE AMERICANS WITH DISABILITIES ACT

84.     Plaintiffs hereby incorporate each and every allegation in the preceding paragraphs of this Complaint as if set forth fully herein.

85.     Defendant is a public school district and, thus, a "public accommodation" under Title II of the ADA.  *See* 42 U.S.C. § 12181.

86.     Title II of the ADA states "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

87.     Public entity includes " any State or local government; [and] and department, agency, special purposed district, or other instrumentality of a State or States or local government . . . ."  42 U.S.C. § 12131(1).

88.     The ADA specifically defines discrimination on the basis of disability to include "the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, privileges, advantages, or accommodations . . .."  *See* 42 U.S.C. § 12182(b)(2)(A)(i).

89.     The ADA prohibits discrimination that includes " a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities..." *See* 42 U.S.C. § 12182(b)(2)(A)(ii).

90.     "Deliberate indifference may be established where harm occurred on numerous previous occasions and officials failed to respond appropriately, or where risk of harm is great and obvious." *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999) (*citing Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)).

91.     The "deliberate indifference standard" requires "(1) knowledge that a federally protected right is substantially likely to be violated . . . and (2) failure to act despite that knowledge." *S.H. v. Lower Merion*, 729 F.3d at 265 (*citing Duvall v. County of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001)).  "Deliberate indifference 'does not require a showing of personal ill will or animosity toward the disabled person.'" *S.H. v. Lower Merion Sch. Dist.*, 729 F.3d 248, 263 (3d Cir. 2013) (*quoting Meagley v. City of Little Rock*, 639 F.3d 384, 389 (8th Cir. 2011) (*quoting Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222, 1228-29 (10th Cir. 2009)).

92.     Risk of harm to Plaintiffs (and all unvaccinated children in the District) is great and obvious.

93.     Defendant, by refusing to follow the proposed health and safety plan proposed by its own Superintendent, is refusing to provide reasonable accommodations to allow Plaintiffs to receive their education because of their disabilities.

94.     Defendant has thereby discriminated against Plaintiffs in violation of the Americans with Disabilities Act.

95.     Defendant's violation of the ADA will cause Plaintiffs the irreparable loss of their

educational placement plus reasonable attorney's fees, costs, and interest.

WHEREFORE, Plaintiffs request the following relief:

a)     A permanent injunction requiring Defendant to implement a Covid-19 Health and Safety Plan that includes all CDC recommendations;

b)     Reimbursement for expert witness costs and fees;

c)     An award of attorneys' fees and costs; and

d)     Such other and further relief as appears reasonable and just.

### COUNT II: SECTION 504 OF THE REHABILITATION ACT

96.     Plaintiffs hereby incorporate each and every allegation in the preceding paragraphs of this Complaint as if set forth fully herein.

97.     Under Section 504, no otherwise qualified individual with a disability shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. 29 U.S.C.S. § 794.

98.     As detailed above, Defendant has intentionally, purposefully, and/or with deliberate indifference violated the rights of Plaintiffs secured by Section 504 of the Rehabilitation Act of 1973, *as amended*, 29 U.S.C. § 794 and 34 C.F.R. § 104.4, by subjecting Plaintiffs to discrimination on the basis of their disabilities or by excluding and/or denying Plaintiffs from participating in, or benefiting from, the Defendant's programs, actives, and services.

99.     Defendant is a recipient of Federal money.

100.     Defendant's sovereign immunity under the Eleventh Amendment is explicitly abrogated pursuant to 42 U.S.C.S. §2000d-7. "A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of

section 504 of the Rehabilitation Act of 1973 [29 USCS §794] . . . ."  42 U.S.C.S. §2000d-7(a)(1).

101.     In claims against a State for violating Section 504, "remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in the suit against any public or private entity other than a state."  42 U.S.C.S. §2000d-7(a)(2).

WHEREFORE, Plaintiffs request the following relief:

a)  Permanent injunction and order directing the School Board to follow the CDC guidelines at all times regarding COVID-19 mitigation measures in schools;

b)  Reimbursement for expert witness fees;

c)  An award of attorneys' fees and costs; and

d)  Such other and further relief as appears reasonable and just.

Dated: 27 August 2021                                     Respectfully submitted,

Kathleen Metcalfe (PA ID 89135)
Adrianna Cherkas (PA ID 209000)
Raffaele & Associates, LLC
1230 County Line Road
Bryn Mawr, PA 19010
T: (610) 922-4200
F: (610) 646-0888
Katie@MyKidsLawyer.com
Adrianna@MyKidsLawyer.com

*Counsel for Plaintiffs*

## **VERIFICATION**

I, A.B., am the Plaintiff in this action and hereby verify that the statements made in the foregoing Emergency Motion for Preliminary Injunction are true and correct to the best of my knowledge, information and belief.

I understand that the statements in said Emergency Motion for Preliminary Injunction are made subject to the penalties of Fed. R. Civ. P. 11, relating to false statements made in pleadings, and 18 Pa. C.S. §4904, relating to falsification to authorities.

_27 Aug 2021_

Date

_AB_

A.B.

DocuSign Envelope ID: 07E90F6E-2E39-4B96-9FF8-5AF060567EB2

## **VERIFICATION**

I, C.G., am the Plaintiff in this action and hereby verify that the statements made in the foregoing Emergency Motion for Preliminary Injunction are true and correct to the best of my knowledge, information and belief.

I understand that the statements in said Emergency Motion for Preliminary Injunction are made subject to the penalties of Fed. R. Civ. P. 11, relating to false statements made in pleadings, and 18 Pa. C.S. §4904, relating to falsification to authorities.

8/27/2021

_____

Date

DocuSigned by:

F4028C89ED7A4E4...

_____

C.G.

## **VERIFICATION**

I, C.G., am the Plaintiff in this action and hereby verify that the statements made in the foregoing Emergency Motion for Preliminary Injunction are true and correct to the best of my knowledge, information and belief.

I understand that the statements in said Emergency Motion for Preliminary Injunction are made subject to the penalties of Fed. R. Civ. P. 11, relating to false statements made in pleadings, and 18 Pa. C.S. §4904, relating to falsification to authorities.

8/27/2021
_____

Date

DocuSigned by:

03BB0D45B9724D7
_____

C.G.

DocuSign Envelope ID: 8FE2AC3E-182A-457B-B915-AA5FF9433199

## <u>VERIFICATION</u>

I, G.H., am the Plaintiff in this action and hereby verify that the statements made in the foregoing Emergency Motion for Preliminary Injunction are true and correct to the best of my knowledge, information and belief.

I understand that the statements in said Emergency Motion for Preliminary Injunction are made subject to the penalties of Fed. R. Civ. P. 11, relating to false statements made in pleadings, and 18 Pa. C.S. §4904, relating to falsification to authorities.

8/27/2021

_____        _____
Date                                                              G.H.

## <u>VERIFICATION</u>

I, H.T., am the Plaintiff in this action and hereby verify that the statements made in the foregoing Emergency Motion for Preliminary Injunction are true and correct to the best of my knowledge, information and belief.

I understand that the statements in said Emergency Motion for Preliminary Injunction are made subject to the penalties of Fed. R. Civ. P. 11, relating to false statements made in pleadings, and 18 Pa. C.S. §4904, relating to falsification to authorities.

8/27/2021
_____

Date

_____

H.T.

## **VERIFICATION**

I, J.G., am the Plaintiff in this action and hereby verify that the statements made in the foregoing Emergency Motion for Preliminary Injunction are true and correct to the best of my knowledge, information and belief.

I understand that the statements in said Emergency Motion for Preliminary Injunction are made subject to the penalties of Fed. R. Civ. P. 11, relating to false statements made in pleadings, and 18 Pa. C.S. §4904, relating to falsification to authorities.

.
27 August 2021

_____

Date

_____

J.G.

DocuSign Envelope ID: 25567E77-D8D3-488C-A785-5172AF863C08

## **VERIFICATION**

I, J.O., am the Plaintiff in this action and hereby verify that the statements made in the foregoing Emergency Motion for Preliminary Injunction are true and correct to the best of my knowledge, information and belief.

I understand that the statements in said Emergency Motion for Preliminary Injunction are made subject to the penalties of Fed. R. Civ. P. 11, relating to false statements made in pleadings, and 18 Pa. C.S. §4904, relating to falsification to authorities.

8/27/2021

_____

Date

_____

J.O.

I, J.U., am the Plaintiff in this action and hereby verify that the statements made in the foregoing Emergency Motion for Preliminary Injunction are true and correct to the best of my knowledge, information and belief.

I understand that the statements in said Emergency Motion for Preliminary Injunction are made subject to the penalties of Fed. R. Civ. P. 11, relating to false statements made in pleadings, and 18 Pa. C.S. §4904, relating to falsification to authorities.

_____         _____
Date                                               J.U.

## **VERIFICATION**

I, K.C., am the Plaintiff in this action and hereby verify that the statements made in the foregoing Emergency Motion for Preliminary Injunction are true and correct to the best of my knowledge, information and belief.

I understand that the statements in said Emergency Motion for Preliminary Injunction are made subject to the penalties of Fed. R. Civ. P. 11, relating to false statements made in pleadings, and 18 Pa. C.S. §4904, relating to falsification to authorities.

8/27/2021
_____

DocuSigned by:
K.C.
31B6438F0E14470...
_____

Date

K.C.

## <u>VERIFICATION</u>

I, K.S., am the Plaintiff in this action and hereby verify that the statements made in the foregoing Emergency Motion for Preliminary Injunction are true and correct to the best of my knowledge, information and belief.

I understand that the statements in said Emergency Motion for Preliminary Injunction are made subject to the penalties of Fed. R. Civ. P. 11, relating to false statements made in pleadings, and 18 Pa. C.S. §4904, relating to falsification to authorities.

8/27/2021
_____

Date

DocuSigned by:

95B28D2E3667466...
_____

K.S.

## **VERIFICATION**

I, L.H., am the Plaintiff in this action and hereby verify that the statements made in the foregoing Emergency Motion for Preliminary Injunction are true and correct to the best of my knowledge, information and belief.

I understand that the statements in said Emergency Motion for Preliminary Injunction are made subject to the penalties of Fed. R. Civ. P. 11, relating to false statements made in pleadings, and 18 Pa. C.S. §4904, relating to falsification to authorities.

8/27/2021
_____

Date

_____

L.H.

## **VERIFICATION**

I, M.B., am the Plaintiff in this action and hereby verify that the statements made in the foregoing Emergency Motion for Preliminary Injunction are true and correct to the best of my knowledge, information and belief.

I understand that the statements in said Emergency Motion for Preliminary Injunction are made subject to the penalties of Fed. R. Civ. P. 11, relating to false statements made in pleadings, and 18 Pa. C.S. §4904, relating to falsification to authorities.

Aug. 27, 2021

Date

MB

M.B.

## VERIFICATION

I, M.B., am the Plaintiff in this action and hereby verify that the statements made in the foregoing Emergency Motion for Preliminary Injunction are true and correct to the best of my knowledge, information and belief.

I understand that the statements in said Emergency Motion for Preliminary Injunction are made subject to the penalties of Fed. R. Civ. P. 11, relating to false statements made in pleadings, and 18 Pa. C.S. §4904, relating to falsification to authorities.

8/27/2021

Date

M.B.

M.B.

## **VERIFICATION**

I, N.S., am the Plaintiff in this action and hereby verify that the statements made in the foregoing Emergency Motion for Preliminary Injunction are true and correct to the best of my knowledge, information and belief.

I understand that the statements in said Emergency Motion for Preliminary Injunction are made subject to the penalties of Fed. R. Civ. P. 11, relating to false statements made in pleadings, and 18 Pa. C.S. §4904, relating to falsification to authorities.

_8/27/21_
Date

_N.S._
N.S.

EXHIBIT A

**Health and Safety Plan Summary:** Central Bucks School District (CBSD)
**Initial Effective Date:**
**Date of Last Review: July 27, 2021**
**Date of Last Revision: July 27, 2021**

**Introduction:** CBSD operations will be implemented in the same manner as those in place prior to the pandemic; this plan reflects exceptions to pre-pandemic operations that we will keep in place to promote general health and safety for all students, employees and visitors as well as remaining compliant with national, state, and local health guidance.

1. **How will the LEA, to the greatest extent practicable, support prevention and mitigation policies in line with the most up-to-date guidance from the CDC for the reopening and operation of school facilities in order to continuously and safely open and operate schools for in-person learning?**

   CBSD's Health and Safety Plan is informed by guidance from our federal, state, and local authorities. These include and are not limited to the Centers for Disease Control and Prevention (CDC), the Pennsylvania Department of Health (PADOH), the Pennsylvania Department of Education (PDE), and the Bucks County Health Department (BCHD).

   CBSD will continue to work in coordination with these agencies and our local partners to develop and refine expectations that meet all requirements.

   CBSD will revise this plan as necessary, based on changing guidance at any of these levels, at the required frequency. Such changes will be communicated to all stakeholders. Additionally, CBSD will monitor the recommendations of federal, state, and local authorities and make adjustments as necessary for all curricular, extra-curricular, and co-curricular programs including travel/field trips.

2. **How will the LEA ensure continuity of services, including but not limited to services to address the students' academic needs, and students' and staff members' social, emotional, mental health, and other needs, which may include student health and food services?**

   CBSD will continue to ensure safe learning and working environments for all students and staff.

   CBSD will continue to provide in-person instruction during the 2021-22 school year. Based on public health conditions and any related mandates/requirements, CBSD will remain positioned to quickly pivot between in-person and online instruction.

CBSD will continue to ensure all students receive instruction that meets state and federal standards and have the necessary supports for success, including access to technology and connectivity.

CBSD will continue to offer a wide array of social and emotional wellness and health supports, including:

- access to licensed social workers, counselors, school psychologists, board certified behavior analysts, and administrators
- delivery of evidence-based SEL program for K-6 students
- resources for staff such as the Employee Assistance Plan provided through Penn Behavioral Health
- supports to meet needs of special populations, through the IEP/504 process and/or through our multi-tiered, multi-domain system of support
- access to training, time, support, and flexibility necessary for staff to prepare for successful instruction.

CBSD will provide proactive, clear communication to all families and staff.

**3. Use the table below to explain how the LEA will maintain the health and safety of students, educators, and other staff and the extent to which it has adopted policies, and a description of any such policy on each of the following safety recommendations established by the CDC.**

| ARP ESSER Requirement | Strategies, Policies, and Procedures |
|---|---|
| a. Universal and correct wearing of masks; | No federal, state, or local health authority requires face coverings indoors or outdoors.  Face coverings will be optional K-12. The district commits to revisiting its plan at each meeting of the board of directors, guided by the recommendations of the local department of health and state department of health, and in conjunction with the most recent data and vaccine availability/eligibility in our area.  If directed to do so by the county health department, the district does reserve the right to require masking if incidence and/or positivity rates rise to a level that requires this measure.  Such decisions will be made in consultation with the BCHD. |
| b. Modifying facilities to allow for physical distancing (e.g., use of cohorts/podding); | CBSD will rely on best practices, informed by federal, state, and local guidance, to design and implement high-quality, student-centered instructional environments.  CBSD will continue to rely on the BCHD's guidance to design safe instructional and workspaces for all individuals. Specifically, physical distancing measures will continue to be maximized to the greatest extent possible, and where it is practical to do so.  This includes, but is not limited to the following:<br><br>a.  Maintaining a minimum of three feet of separation (to the extent possible) in classrooms |

| ARP ESSER Requirement | Strategies, Policies, and Procedures |
|---|---|
| | b.  Maintaining distancing measures in hallways, including to the extent possible one way halls, and maintaining spacing while moving throughout the building<br>c.  School cafeterias will return to normal operations; however, in K-6, seating charts will be maintained |
| c.  Handwashing and respiratory etiquette; | Handwashing and respiratory etiquette will continue to be promoted. Instructional signs regarding appropriate handwashing and respiratory etiquette will continue to be strategically placed in appropriate spaces.<br><br>All individuals will continue to be encouraged and reminded to sanitize or wash their hands on a frequent basis. Hand sanitizer will continue to be made available in all common areas, hallways, and/or lobby areas where sinks for handwashing are not available, in order to encourage frequent use. CBSD will continue to post signs in highly visible locations that promote everyday protective measures/hygiene and how to stop the spread of germs. CBSD will continue to include proper personal hygiene in program curricula. |
| d.  Cleaning and maintaining healthy facilities, including improving ventilation; | Established cleaning and ventilation protocols will continue to be implemented during the 2021-2022 school year.<br><br>All cleaning products are approved by the EPA for COVID-19 mitigation. CBSD will continue to follow proper cleaning and disinfection protocols following CDC, EPA, and manufacturer guidelines.<br><br>•  Sanitizing wipes will continue to be provided in classrooms and high traffic areas.<br>•  Daily cleaning and sanitization of high touch surfaces, classrooms and desktops will continue during the 2021-2022 school year.<br><br>Hand sanitizing stations will continue to be maintained throughout all buildings. |
| e.  Contact tracing in combination with isolation and quarantine, in collaboration with the State and local health departments; | CBSD will continue to work in partnership with the BCHD for all COVID-19-related case investigation and contact tracing.<br><br>Per the BCHD, as of June 19, 2021:<br>•  The BCHD will no longer require individuals to report positive COVID-19 test results or exposure to a positive case.<br>•  The BCHD will no longer require CBSD to report positive COVID-19 test results of individuals to the BCHD. |

| ARP ESSER Requirement | Strategies, Policies, and Procedures |
|---|---|
| | <ul><li>Local COVID-19 testing laboratories will continue to report positive COVID-19 test results to the BCHD through the Pennsylvania National Electronic Disease Surveillance System (PA-NEDSS).</li><li>CBSD will consult with the BCHD in the event of any public health-related questions or concerns for guidance.  This includes COVID-19.</li><li>The BCHD may recommend temporary disease mitigation strategies (such as increased physical distancing, masking, etc.). If BCHD were to make a targeted/temporary recommendation for mitigation, CBSD would communicate the recommendation to those directly involved.</li><li>The BCHD will no longer issue isolation or quarantine orders related to COVID-19.</li><li>The BCHD will not require CBSD to notify close contacts of any positive case.  As such, no notifications will be made.</li><li>The BCHD will not require CBSD to notify any individual, classroom, school, or community of any positive case of COVID-19.  As such, no such communications will be sent.</li></ul> |
| f. Diagnostic and screening testing; | At the recommendation of the BCHD, CBSD will no longer require individuals to attest formally to symptom tracking for COVID-19 upon entering district buildings.<br><br>At the recommendation of the BCHD, CBSD will no longer require contractors to complete the daily close contact tracking form. CBSD will instead regularly communicate best practices for health and personal hygiene to all stakeholders to reinforce healthy instructional and work environments.<br><br>The BCHD is no longer offering free COVID-19 testing for school stakeholders.  The BCHD recommends that CBSD refer any individual in need of a COVID-19 test to a medical health provider. |
| g. Efforts to provide vaccinations to school communities; | CBSD will continue to partner with federal, state, local, and health care agencies regarding opportunities to receive the COVID-19 vaccination.<br><br>CBSD will collaborate with local pharmacies and share vaccination opportunities with eligible students and staff. |
| h. Appropriate accommodations for students with disabilities with respect to health | CBSD is a high-quality provider of services for individuals with disabilities.  The district will continue to meet those needs through the IEP/504 process and the multi-tiered, multi-domain system of support model.   The district will continue to design and follow any individualized health and safety plan for the students we serve. |

| ARP ESSER Requirement | Strategies, Policies, and Procedures |
|---|---|
| and safety policies; | CBSD will continue to train staff and contractors on Universal Precautions. <br><br> CBSD will communicate best practices for health and personal hygiene to all stakeholders to reinforce healthy instructional and work environments. <br><br> CBSD will continue to partner with federal, state, local, and health care agencies to promote and offer opportunities to receive the COVID-19 vaccination. |
| i.    Coordination with state and local health  officials. | CBSD will rely on best practices, informed by federal, state, and local guidance, to design and implement high-quality, student-centered instructional environments. <br><br> Specifically, CBSD will rely on local health authority guidance to design safe instructional and workspaces for all individuals. <br><br> CBSD will continue to participate in discussion forums and planning with federal, state, and local health authorities, and among local school entities. |

**Health and Safety Plan Governing Body Affirmation Statement**

The Board of Directors/Trustees for the **Central Bucks School District** reviewed and approved the Health and Safety Plan on **July 27, 2021.**

The plan approved by a vote of:

**_____ Yes**

**_____ No**

Affirmed on: **July 27, 2021**

By:

_____

(*Signature\* of Board President*)

_____

(*Print Name of Board President*)

\*Electronic signatures on this document are acceptable using one of the two methods detailed below.

**Option A:** The use of actual signatures is encouraged whenever possible. This method requires that the document be printed, signed, scanned, and then submitted.

**Option B:** If printing and scanning are not possible, add an electronic signature using the resident Microsoft Office product signature option, which is free to everyone, no installation or purchase needed.

EXHIBIT B

**Health and Safety Plan Summary:** Central Bucks School District (CBSD)
**Initial Effective Date: August 18, 2021**
**Date of Last Review: August 23, 2021**
**Date of Last Revision: August 23, 2021**

**Introduction:** CBSD operations will be implemented in the same manner as those in place prior to the pandemic; this plan reflects exceptions to pre-pandemic operations that we will keep in place to promote general health and safety for all students, employees, and visitors as well as remaining compliant with national, state, and local health guidance.

1. **How will the LEA, to the greatest extent practicable, support prevention and mitigation policies in line with the most up-to-date guidance from the CDC for the reopening and operation of school facilities in order to continuously and safely open and operate schools for in-person learning?**

    CBSD's Health and Safety Plan is informed by guidance from our federal, state, and local authorities. These include and are not limited to the Centers for Disease Control and Prevention (CDC), the Pennsylvania Department of Health (PADOH), the Pennsylvania Department of Education (PDE), and the Bucks County Health Department (BCHD).

    CBSD will continue to work in coordination with these agencies and our local partners to develop and refine expectations that meet all requirements.

    CBSD will revise this plan as necessary, based on changing guidance at any of these levels, at the required frequency. Such changes will be communicated to all stakeholders. Additionally, CBSD will monitor the recommendations of federal, state, and local authorities and make adjustments as necessary for all curricular, extra-curricular, and co-curricular programs including travel/field trips.

2. **How will the LEA ensure continuity of services, including but not limited to services to address the students' academic needs, and students' and staff members' social, emotional, mental health, and other needs, which may include student health and food services?**

    CBSD will continue to ensure safe learning and working environments for all students and staff.

    CBSD will continue to provide in-person instruction during the 2021-22 school year. Based on public health conditions and any related mandates/requirements, CBSD will remain positioned to quickly pivot between in-person and online instruction.

    CBSD will continue to ensure all students receive instruction that meets state and federal standards and have the necessary supports for success, including access to technology and connectivity.

CBSD will continue to offer a wide array of social and emotional wellness and health supports, including:

- access to licensed social workers, counselors, school psychologists, board certified behavior analysts, and administrators
- delivery of evidence-based SEL program for K-6 students
- resources for staff such as the Employee Assistance Plan provided through Penn Behavioral Health
- supports to meet needs of special populations, through the IEP/504 process and/or through our multi-tiered, multi-domain system of support
- access to training, time, support, and flexibility necessary for staff to prepare for successful instruction.

The vaccination status of a person is private; therefore, staff members will not ask, solicit, or engage in discussion around the vaccination status of another adult or student. However, a parent may offer proof of vaccination to their School Nurse to be added as part of their child's health record or to qualify for a shorter quarantine time in the event that a student is identified as a close contact.

CBSD will provide proactive, clear communication to all families and staff.

3. **Use the table below to explain how the LEA will maintain the health and safety of students, educators, and other staff and the extent to which it has adopted policies, and a description of any such policy on each of the following safety recommendations established by the CDC.**

| ARP ESSER Requirement | Strategies, Policies, and Procedures |
|---|---|
| a. Universal and correct wearing of masks; | Central Bucks School District's masking strategies are in alignment with the CDC, PADOH, and BCHD. The goal of our masking strategies is to minimize the spread of COVID-19 and allow full-day, five-day in-person instruction for students. |
| | The level of COVID-19 local transmission and the percent of vaccinations may become a factor in making changes to the masking strategies enacted. |
| | The plan that follows is tiered to demonstrate safety protocols for when masks are required and when they are optional. **Effective upon the approval of this Health & Safety Plan, CBSD schools will require masks.** Depending on levels of transmission and percentage of community vaccination, the BCHD may advise that CBSD may move into a "mask optional" mode. CBSD will communicate with all staff and families if and when that should happen. |
| | **During Times of REQUIRED MASKING:** |

| ARP ESSER Requirement | Strategies, Policies, and Procedures |
|---|---|
| | • All students, staff, and visiting guests, regardless of vaccination status, are required to wear a mask WHILE INDOORS on district grounds. <br> • Exceptions: <br>　○ "Per CDC guidance, individuals who are fully vaccinated no longer need to wear masks or physically distance when participating in sports and extracurricular activities" ([Letter from BCHD, August 23, 2021](#)). <br>　○ While eating, drinking, or snacking (during such times, the mask may be removed and then put back in place when finished). <br>　○ While working in isolation within an enclosed office or classroom. <br> • Masked students who are 3 feet or more apart from a confirmed positive COVID-19 case will not be considered close contacts and therefore will not be reported to BCHD or required to quarantine. <br> • Students, staff, and visiting guests, regardless of vaccination status, will NOT be required to mask while outside on district grounds. This applies to outdoor times during the instructional day (i.e., recess, PE classes, etc.), sports, extra-and co-curricular meetings, activities, and events. Masking outdoors is always optional. <br> • All students, staff, and visiting guests, regardless of vaccination status, will be required to mask while on school buses. <br> • The correct wearing of masks includes covering both the nose and the mouth. <br> • Face shields do not qualify as face masks. <br><br> NOTE: CBSD will accept mask exemptions for students who: <br> • Complete the CBSD Student Mask Exemption Form <br> • The form is signed by a medical physician <br> • The medical physician indicates the medical reason why the student cannot wear a mask. <br><br> During Times of MASK OPTIONAL: <br> • "Per the CDC order on wearing masks on public transportation, regardless of the school mask policy, masks are required to be worn by passengers and drivers on school buses" ([Letter from BCHD, August 23, 2021](#)). Therefore, even when CBSD is "mask optional" all students, staff, and visiting guests must wear a mask on school buses until the CDC order is changed or revoked. <br> • Any student exhibiting symptoms in school will be masked by the nurse.  If a parent of a symptomatic student does not want that student to mask, that student must be picked up by the parent, and may not return to school until they are symptom free and fever free for 24 hours without medication. |

| ARP ESSER Requirement | Strategies, Policies, and Procedures |
|---|---|
| | • Students who are able and choose to mask, and who are 3 feet or more apart from a confirmed positive COVID-19 case, will not be considered close contacts; therefore, they will not be reported to BCHD and they will not be required to quarantine. |
| b. Modifying facilities to allow for physical distancing (e.g., use of cohorts/podding); | CBSD will rely on best practices, informed by federal, state, and local guidance, to design and implement high-quality, student-centered instructional environments.  CBSD will continue to rely on the BCHD's guidance to design safe instructional environments and workspaces for all individuals. Specifically, physical distancing measures will continue to be maximized to the greatest extent possible, and where it is practical to do so.  This includes, but is not limited to the following:<br><br>    a.  Maintaining a minimum of three feet of separation (wherever possible) in classrooms<br>    b.  Maintaining distancing measures in hallways, including wherever possible one way halls, and maintaining spacing while moving throughout the building<br>    c.  School cafeterias will return to normal operations; however, in K-6, seating charts will be maintained<br>    d.  Seating charts will be established on all buses.<br>    e.  Bus riders from the same household will be seated together when possible. |
| c. Handwashing and respiratory etiquette; | Handwashing and respiratory etiquette will continue to be promoted. Instructional signs regarding appropriate handwashing and respiratory etiquette will continue to be strategically placed in appropriate spaces.<br><br>All individuals will continue to be encouraged and reminded to sanitize or wash their hands on a frequent basis. Hand sanitizer will continue to be made available in all common areas, hallways, and/or lobby areas where sinks for handwashing are not available, in order to encourage frequent use. CBSD will continue to post signs in highly visible locations that promote everyday protective measures/hygiene and how to stop the spread of germs. CBSD will continue to include proper personal hygiene in program curricula. |
| d. Cleaning and maintaining healthy facilities, including improving ventilation; | Established cleaning and ventilation protocols will continue to be implemented during the 2021-2022 school year.<br><br>All cleaning products are approved by the EPA for COVID-19 mitigation. CBSD will continue to follow proper cleaning and disinfection protocols following CDC, EPA, and manufacturer guidelines. |

| ARP ESSER Requirement | Strategies, Policies, and Procedures |
|---|---|
| | • Sanitizing spray will continue to be provided in classrooms and high traffic areas.<br>• Daily cleaning and sanitization of high touch surfaces, classrooms and desktops will continue during the 2021-2022 school year.<br><br>Hand sanitizing stations will continue to be maintained throughout all buildings. |
| e. Contact tracing in combination with isolation and quarantine, in collaboration with the State and local health departments; | CBSD will continue to work in partnership with the BCHD for all COVID-19-related case investigation and contact tracing.<br><br>CBSD strongly urges parents/guardians to report children's confirmed cases of COVID-19 to their school's nurse.<br><br>CBSD is required to report student and staff cases to BCHD.<br><br>CBSD will notify the parents/guardians of students who are in the same class(es)/bus as a person who has tested positive for COVID-19.<br><br>CBSD will report close contacts to BCHD and the parents/guardians of the student. As per the CDC, K-12 students who are masked and 3 or more feet apart from a positive COVID-19 case will not be considered close contacts and therefore will not be reported to BCHD or required to quarantine.<br><br>In the event there is evidence of potential COVID-19 spread within a school, BCHD will advise whether further mitigation strategies should be taken. "Targeted Temporary Mitigation" (TTM) strategies might include but are not limited to masking (when not already mandatory), physical distancing, cleaning/disinfecting, and virtual learning. These strategies will be targeted to just the affected classrooms, groups, or schools/district buildings where potential spread of COVID-19 is of concern. These strategies will be temporary, meaning they will end when the potential spread of virus in that case is expired.<br><br>COVID-19 Cases:<br>• An isolation area will be available in each school for students exhibiting symptoms while in school.<br>• "Whether symptomatic or asymptomatic, any individual who tests positive for COVID-19 must isolate for 10 days as both symptomatic and asymptomatic individuals can transmit the virus during that time" (Letter from BCHD, August 23, 2021). The student, staff member, or visiting guest may return to school on the 11th day so long as all symptoms are resolved and fever free for 24 hours without medication. |

| ARP ESSER Requirement | Strategies, Policies, and Procedures |
|---|---|
| | **Close Contacts:**<br>• As per the CDC, a close contact is a person who was within 6 feet for more than 15 minutes (Appendices | CDC).<br>• Schools will report close contacts to BCHD who will recommend whether quarantine is required.<br>• CDC guidance adds the following exception to the definition of close contact:<br>   ○ In the K–12 indoor classroom setting, the close contact definition excludes students who were within 3 to 6 feet of an infected student (laboratory-confirmed or a clinically compatible illness) where:<br>     ✓ both students were engaged in consistent and correct use of well-fitting face masks; and<br>     ✓ other K–12 school prevention strategies (such as universal and correct mask use, physical distancing, increased ventilation) were in place in the K–12 school setting.<br>   NOTE: This exception does not apply to teachers, staff, or visiting guests in the indoor classroom setting (Letter from BCHD, August 23, 2021)<br><br>**Close Contacts who are FULLY VACCINATED and ASYMPTOMATIC:**<br>• Do not need to quarantine at home following an exposure (they may continue to attend school in-person and participate in other activities) only if they correctly wear a mask for 14 days or until they receive a negative test result (Science Brief: Options to Reduce Quarantine for Contacts of Persons with SARS-CoV-2 Infection Using Symptom Monitoring and Diagnostic Testing | CDC).<br><br>**Close Contacts who are NOT FULLY VACCINATED (regardless of symptoms)**<br>• Regardless of test result, will remain at home for 10 days OR 7 days combined with a negative test result on day 5 or later.<br>• Mask for 14 days past last known exposure (Science Brief: Options to Reduce Quarantine for Contacts of Persons with SARS-CoV-2 Infection Using Symptom Monitoring and Diagnostic Testing | CDC).<br><br>CBSD strongly encourages all eligible individuals to be vaccinated. |
| f.  Diagnostic and screening testing; | CBSD will make COVID-19 rapid-testing available in schools for students and staff.  Students may be rapid tested in school ONLY with prior parent permission. If not tested in school, any individuals who have symptoms consistent with COVID-19 will be referred for COVID-19 testing. (Letter from BCHD, August 23, 2021) |

| ARP ESSER Requirement | Strategies, Policies, and Procedures |
|---|---|
| | |
| g.   Efforts to provide vaccinations to school communities; | CBSD will continue to partner with federal, state, and local health care agencies and providers regarding opportunities to receive the COVID-19 vaccination.<br><br>CBSD will collaborate with local pharmacies and share vaccination opportunities with eligible students and staff. |
| h.   Appropriate accommodations for students with disabilities with respect to health and safety policies; | CBSD is a high-quality provider of services for individuals with disabilities.  The district will continue to meet those needs through the IEP/504 process and the multi-tiered, multi-domain system of support model.   The district will continue to design and follow any individualized health and safety plan for the students we serve. CBSD will continue to train staff and contractors on Universal Precautions.<br><br>CBSD will communicate best practices for health and personal hygiene to all stakeholders to reinforce healthy instructional and work environments.<br><br>CBSD will continue to partner with federal, state, local, and health care agencies to promote and offer opportunities to receive the COVID-19 vaccination. |
| i.   Coordination with state and local health  officials. | CBSD will rely on best practices, informed by federal, state, and local guidance, to design and implement high-quality, student-centered instructional environments.<br><br>Specifically, CBSD will rely on local health authority guidance to design safe instructional and workspaces for all individuals.<br><br>CBSD will continue to participate in discussion forums and planning with federal, state, and local health authorities, and among local school entities. |

Health and Safety Plan Governing Body Affirmation Statement

The Board of Directors/Trustees for the **Central Bucks School District** reviewed and approved the Health and Safety Plan on **August 25, 2021.**

The plan approved by a vote of:

**_____  Yes**

**_____  No**

Affirmed on: **August 25, 2021**

By:

_____

(*Signature\* of Board President*)

_____

(*Print Name of Board President*)

\*Electronic signatures on this document are acceptable using one of the two methods detailed below.

**Option A:** The use of actual signatures is encouraged whenever possible. This method requires that the document be printed, signed, scanned, and then submitted.

**Option B:** If printing and scanning are not possible, add an electronic signature using the resident Microsoft Office product signature option, which is free to everyone, no installation or purchase needed.